## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANNON GARCIA,** | : | **CIVIL ACTION NO.:** |
| *Plaintiff,* | : | |
| **v.** | : | |
| **BCD TRAVEL USA LLC,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : | |

## COMPLAINT AND JURY DEMAND

### I.   PRELIMINARY STATEMENT

1.     This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff, Shannon Garcia ("Plaintiff Garcia"), a former employee of Defendant, BCD Travel USA LLC ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory actions, ultimately resulting in the termination of her employment.

2.     This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. §1981(a) ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. §201 et seq, as amended by the Equal Pay Act, 29 U.S.C. §206(d) ("EPA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA").

II.   **JURISDICTION AND VENUE**

3.      The original jurisdiction of this Court is invoked pursuant to 28 U.S.C.

§1331 and the claims are substantively based on Title VII and the EPA. The supplemental

jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, to consider Plaintiff

Garcia's claim arising under the PHRA.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as a

substantial part of the events or omissions giving rise to Plaintiff Garcia's claims occurred

in this judicial district.

5.      All conditions precedent to the institution of this suit have been fulfilled.

On March 3, 2016, a Notice of Right to Sue was issued by the United States Equal

Employment Opportunity Commission ("EEOC"), and this action has been filed within

ninety (90) days of receipt of said notices.

6.      Plaintiff Garcia has satisfied all other jurisdictional prerequisites to the

maintenance of this action.

III.   **PARTIES**

7.      Plaintiff, Shannon Garcia ("Plaintiff Garcia"), is a forty eight (48) year old

female citizen of the Commonwealth of Pennsylvania, residing therein at 150 East

Caracas Avenue, Hershey, Pennsylvania 17033.

8.      Defendant, BCD Travel USA LLC ("Defendant"), is a corporation duly

organized and existing under the laws of the State of Georgia, maintaining a principal

place of business located at Six Concourse Parkway, Suite 2400, Atlanta, Georgia 30328.

9.      At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

10.      At all times material herein, the Defendant has been a "person" and "employer" as defined under Title VII, the EPA, and the PHRA and has been, and is, subject to the provisions of each said Act.

## III.   STATEMENT OF FACTS

11.      Plaintiff Garcia was employed by the Defendant from in or about May of 2013 until on or about October 22, 2014, the date of her unlawful termination.

12.      During her tenure of employment with the Defendant, Plaintiff Garcia held the position of Vice President and Principal, and at all times maintained an excellent job performance rating in that capacity.

13.      By way of background, Plaintiff Garcia possesses extensive experience in the field of travel management and consulting.  In or about 1990, Plaintiff Garcia commenced her career with Ritz-Carlton Houston as a Business Travel Sales Manager.  In or about 1992, Plaintiff Garcia accepted the position of Business Travel Sales Manager with Omni Hotels in Houston.  In or about 1993, Plaintiff Garcia was awarded the honor of Omni Hotels Business Travel Sales Executive of the Year, and was inducted into Omni Hotels' President's Circle.  In or about 1994, Plaintiff Garcia transitioned to the position

of National Director of Business Travel Sales, Eastern Region, with Omni Hotels National Sales. In or about 1996, she was named National Business Travel Sales Executive of the Year, and received the President's Circle Award from her then employer.

14.    In or about 1997, Plaintiff Garcia commenced employment with BCD Travel, LLC (formerly WorldTravel BTI), as Director of Hotel Relations. During her first eighteen (18) months in said position, Plaintiff Garcia achieved a $1.8 million gain in net profits. Additionally, she established a performance-based incentive program generating approximately $1 million in revenue. In or about 2001, Plaintiff Garcia accepted a promotion to the position of Vice President of National Sales and Distribution with Prime Hospitality Corporation. In or about 2004, Plaintiff Garcia returned to BCD Travel, LLC and assumed the position of Vice President of Business Development. In or about 2005, Plaintiff Garcia was promoted to the position of Vice President of Global Sales. In that role, Plaintiff Garcia consistently exceeded her sales targets by significant margins and, as a result, received the President's Club Award in 2006, 2007, 2008, and 2010.

15.    In or about May of 2013, Plaintiff Garcia assumed the position of Vice President and Principal with Advito, LLC, the sister company of Defendant, which specializes in consulting.

16.    Shortly after commencing employment, the Defendant assigned Plaintiff Garcia a portfolio comprised of approximately thirty five (35) accounts. Significantly, Defendant provided other similarly situated male employees, including Mark Williams

("Williams"), Vice President and Principal, Bob Brindley ("Brindley"), Vice President and

Principal, George Odom ("Odom"), Vice President and Principal, and Jeroen Hurkmans

("Hurkmans"), Vice President and Principal, with nearly two hundred (200) accounts each.

17.     In or about June of 2013, Plaintiff Garcia contacted April Bridgeman

("Bridgeman"), regarding the disparity in the number of accounts between herself and the

aforesaid similarly situated male employees.  Plaintiff Garcia stated her belief that the

disparity was due to her sex (female). Bridgeman acknowledged the disparity and assured

Plaintiff Garcia that the Defendant would remedy the situation, however no corrective

action was taken.

18.     Thereafter, Plaintiff Garcia registered four (4) separate complaints of sex

discrimination with Bridgeman between June of 2013 and August of 2013.

Notwithstanding Plaintiff Garcia's protestations, the Defendant failed and refused to take

any remedial action.

19.     Significantly, the Defendant's failure and refusal to provide Plaintiff Garcia

with a number of accounts equal to her male counterparts caused Plaintiff Garcia to

experience difficulty in meeting target sales goals and, in turn, achieving the level of

commissions to which she was accustomed.

20.     In or about September of 2013, Plaintiff Garcia sent an email to Bridgeman

and Gary Reeves ("Reeves"), Senior Vice President of Global Sales, wherein she

documented the aforesaid discriminatory disparity in her number of accounts as compared

to her male counterparts and demanded that she receive a distribution of accounts equal to that of her male counterparts.

21.     In or about October of 2013, the Defendant terminated the employment of Williams.  Thereafter, the Defendant transferred many of Williams' accounts to Plaintiff Garcia.  However, the Defendant failed to provide Plaintiff Garcia with any high value accounts, and instead provided her with "cold call" accounts which generated little or no sales.  In stark contrast, however, the Defendant provided Brindley with many of Williams' high value accounts, thereby affording Brindley the opportunity to increase his sales and commissions.

22.     Nonetheless, Plaintiff Garcia managed to expand existing business and achieve new business from the previously disadvantageous accounts.  However, as a result of the Defendant's refusal to provide her with an equal amount of accounts as compared to her male colleagues, she was unable to meet her sales targets for 2013.

23.     In or about May of 2014, Vanessa Williams ("Williams"), Human Resources Representative, mistakenly sent an email to the Leadership Team, including Plaintiff Garcia, which included salary ranges by position.  In connection thereto, Plaintiff Garcia discovered that the Defendant compensated her at a significantly lower salary than that of her male counterparts, including Brindley and Odom.  Plaintiff Garcia also discovered that Marwan Batrouni ("Batrouni"), Senior Director, received a higher salary than Plaintiff Garcia despite his subordinate position.

24. Upon information and belief, the Defendant compensated Brindley at a salary of approximately $200,000 per annum, plus commissions. Likewise, Defendant compensated Odom at a salary of approximately $185,000 per annum, plus commissions. In contrast, the Defendant only compensated Plaintiff at a salary of $145,000 per annum, plus commissions despite her performance of the identical job responsibilities as Brindley and Odom.

25. In connection thereto, Plaintiff Garcia registered a complaint of unequal pay and sex discrimination with Bridgeman. Specifically, Plaintiff Garcia expressed her belief that Defendant was compensating similarly situated male employees, namely Brindley and Odom, at a significantly higher rate of pay than Plaintiff based on their sex (male). Bridgeman agreed to speak with Reeves regarding Plaintiff Garcia's complaint.

26. On or about May 19, 2014, Plaintiff Garcia met with Bridgeman regarding her performance review and explained that she was unable to meet her sales targets solely because Defendant refused to provide her with an amount of accounts equal to other similarly situated male colleagues. Additionally, Plaintiff Garcia reiterated her belief that Defendant compensated her male counterparts at a substantially higher rate of pay than Plaintiff Garcia despite the performance of the same job.

27. In response, Bridgeman acknowledged the pay disparity and agreed that Defendant would remedy the situation. Bridgeman assured Plaintiff Garcia that she would speak with Louise Miller ("Miller"), Executive Vice President, and Kathy Jackson

("Jackson"), Executive Vice President, and recommend that Defendant increase her base pay to the same level as that of her male counterparts, as well as adjust her bonus schedule.

28.     Between June of 2014 and August of 2014, Plaintiff Garcia contacted Bridgeman approximately four (4) times regarding the status of her discrimination complaint.  Bridgeman repeatedly informed Plaintiff Garcia that she was "too busy" to discuss the issue.

29.     In or about September of 2014, Bridgeman began requiring Brindley to accompany Plaintiff Garcia to meetings with clients.  Significantly, other similarly situated male Vice Presidents and Principals did not require similar accompaniment.

30.     In or about early October of 2014, Plaintiff Garcia contacted Bridgeman and demanded a resolution to her complaint of sex discrimination, as Defendant continued to refuse to pay her a salary equal to other similarly situated male employees.  Bridgeman instructed Plaintiff Garcia to schedule a conference call between herself, Bridgeman, and Reeves.

31.     Pursuant to Bridgeman's directive, Plaintiff Garcia scheduled the aforesaid conference call on two (2) separate occasions.  However, on both occasions, Bridgeman and Reeves failed to join the call.

32.     On or about October 22, 2014, Plaintiff Garcia received a phone call from Bridgeman and Todd Stills ("Stills"), Human Resources Representative.  During the call, Bridgeman and Stills informed Plaintiff Garcia that her employment was terminated,

allegedly because Defendant was "eliminating" her position.

33.     In response, Plaintiff informed Bridgeman and Stills that she believed Defendant's act of terminating her employment was in retribution for demanding that Defendant provide her with compensation equal to other similarly situated male employees.

34.     Upon information and belief, Odom consistently failed to meet his sales targets and, at the time of Plaintiff Garcia's termination, had stated his intention to retire in January of 2015. Curiously, Defendant selected Plaintiff Garcia for elimination rather than Odom.

35.     Plaintiff Garcia believes and avers that the Defendant's articulated reason for her termination was pretextual and that her employment was actually terminated based on her sex (female) and in retaliation for registering complaints of sex discrimination/unequal pay.

**COUNT I**
**(Title VII - Sex Discrimination, Retaliation)**
**Plaintiff Garcia v. the Defendant**

36.     Plaintiff Garcia incorporates by reference paragraphs 1 through 35 of this Complaint as though fully set forth at length herein.

37.     The actions of the Defendant, through its agents, servants and employees, in subjecting her to discrimination on the basis of her sex and to retaliation for opposing unlawful sex discrimination, ultimately resulting in the termination of her employment,

constituted a violation of Title VII.

38.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Garcia sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

39.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Garcia suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**COUNT II**
**(PHRA - Sex Discrimination, Retaliation)**
**Plaintiff Garcia v. the Defendant**

40.     Plaintiff Garcia incorporates by reference paragraphs 1 through 39 of this Complaint as though fully set forth at length herein.

41.     The actions of the Defendant, through its agents, servants and employees, in subjecting her to discrimination on the basis of her sex and to retaliation for opposing unlawful sex discrimination, ultimately resulting in the termination of her employment, constituted a violation of the PHRA.

42.     As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Garcia sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

43.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Garcia suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**COUNT III**
**(EPA - Unequal Pay, Retaliation)**
**Plaintiff Garcia v. the Defendant**

44.     Plaintiff Garcia incorporates by reference paragraphs 1 through 43 of this Complaint as though fully set forth at length herein.

45.     The actions of the Defendant, through its agents, servants and employees, in denying Plaintiff Garcia equal pay as similarly situated male employees, and in retaliating against Plaintiff Garcia for opposing unequal pay which ultimately resulted in the termination of her employment, constituted a violation of the EPA.

46.     The unlawful discriminatory and retaliatory employment practices engaged in by the Defendant were willful and in violation of the provisions of the EPA.

47.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the EPA, Plaintiff Garcia sustained permanent and irreparable harm to her employment relationship with the Defendant, causing her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

**PRAYER FOR RELIEF**

48.     Plaintiff Garcia incorporates by reference paragraphs 1 through 47 of this Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Garcia requests that this Court enter judgment in her favor against the Defendant, and Order that:

a.     Defendant compensate Plaintiff Garcia for the wages and other benefits and emoluments of employment lost, because of its unlawful conduct;

b.     Defendant compensate Plaintiff Garcia with an award of front pay, if appropriate;

c.     Defendant pay to Plaintiff Garcia punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

-12-

    d.      Defendant pay to Plaintiff Garcia, pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

    e.      The Court award such other relief as is deemed just and proper.

## **JURY DEMAND**

Plaintiff Garcia demands a trial by jury.

SIDNEY L. GOLD & ASSOCIATES, P.C.


/s/Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. NO.: 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff**

Dated: May 25, 2016

-13-

## VERIFICATION

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

SHANNON GARCIA, PLAINTIFF

DATED: May 23, 2016